IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| TAMMY MCEOWEN, | ) | Case No. 1:20-cv-11 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | **AND JURY DEMAND** |
| GODADDY.COM, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Tammy McEowen, for her complaint against Defendant GoDaddy.com, LLC, states and alleges as follows:

## NATURE OF THE ACTION

1.    Plaintiff Tammy McEowen brings this action based on age discrimination. Defendant failed to hire Plaintiff, age 53, for a marquis account management position despite her superior qualifications and outstanding performance record.  Because of age discrimination, Defendant instead chose to hire three individuals in their 20s and 30s.

## PARTIES

2.    Plaintiff Tammy McEowen is a resident of Cedar Rapids, Linn County, Iowa.

3.    Defendant GoDaddy.com, LLC ("GoDaddy") is a Delaware Limited Liability Company with its headquarters and principal place of business in Scottsdale, Arizona, and with an office and customer service center in Hiawatha, Iowa.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over Plaintiff's claim under the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., pursuant to 28 U.S.C. §§ 1331

1

and 1343. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related age discrimination claims under Iowa law. This action is not related to any other case filed in this Court.

5. Venue is proper in this Court and District by operation of 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Hiawatha, Linn County, Iowa.

6. Plaintiff has exhausted her administrative remedies and complied with all statutory prerequisites. Plaintiff timely filed a complaint of age discrimination with the Iowa Civil Rights Commission ("ICRC"). Plaintiff has received right to sue letters from the ICRC and EEOC and timely files this lawsuit to vindicate her rights.

## STATEMENT OF FACTS

7. GoDaddy is one of the nation's largest providers of web hosting services.

8. GoDaddy's headquarters is in Scottsdale, Arizona, and it has a number of satellite offices, including a customer service and sales center in Hiawatha, Iowa.

9. GoDaddy employs approximately 6,000 people at its various offices.

10. Ms. McEowen began working for GoDaddy in January of 2014 at its Hiawatha, Iowa location.

11. Ms. McEowen came to GoDaddy with a proven record of success in sales and customer service. She had nine years of experience working as an Account Executive for McLeod USA Publishing and fourteen years of experience working as an Advertising Consultant for Dex One. She was responsible for handling major client accounts in both positions, and she was regularly commended for her excellent performance.

12.     Ms. McEowen continued her record of success while working for GoDaddy. She has worked in various positions for GoDaddy: first in Internet Sales and Technical Support, then in Customer Development, and then in Hosting Sales and Support. GoDaddy recognized her excellent work in each position with awards and bonuses.

13.     On July 16, 2018, GoDaddy announced on its internal job postings that it was hiring for a Premier Services position in Hiawatha.

14.     Ms. McEowen's supervisor, Stuart Williams, told her that in his opinion she was the perfect fit for the position.

15.     GoDaddy's Premier Services employees are its marquis sales and customer service workers, tasked with managing accounts for GoDaddy's top customers.

16.     The job responsibilities for Premier Services involve a mix of customer service and relations, technical support, and marketing.

17.     Ms. McEowen's experience made her well qualified to work in Premier Services.  At the time she applied, she had 23 years of experience in managing major accounts.  She was familiar with GoDaddy's business and she had excellent sales, customer relations, and tech support skills as demonstrated by the excellent performance reviews and many performance awards that GoDaddy had given her.  She also had experience selling premium domains to customers and had undertaken self-education on web domains.

18.     To prepare for the interview, Ms. McEowen sought and received permission to shadow a current Premier Services employee, which she did on July 24, 2018.

19.     Ms. McEowen interviewed for the Premier Services position on July 31, 2018. The interview was with Brian Markham, GoDaddy's Premier Services Manager, and was conducted via video conference.

20.     At the conclusion of the interview, Mr. Markham asked if Ms. McEowen had any questions. She had two: she asked how her qualifications matched what he was looking for in candidates, and she asked what she could do to better prepare herself for the position. Markham responded that the qualifications he was looking for in a candidate were "pretty much 100% of what you just said" and he pledged to send her links to resources with more information on premium web domains.

21.     Later that day, Ms. McEowen sent an email thanking Mr. Markham for the interview and following up about the promised materials. He responded with the promised information, which Ms. McEowen faithfully studied.

22.     GoDaddy had told Ms. McEowen that there would be a second round of interviews for the Premier Services position, but she heard nothing more until August 21, 2018. On that date, Markham sent an email to all applicants informing them that he and the Recruiting department were working to select candidates for follow-up interviews.

23.     On August 23, GoDaddy informed Ms. McEowen by letter that she had not been selected to proceed to the second round of interviews because she was not qualified for the Premier Services position.

24.     After receiving this letter, Ms. McEowen followed up with Mr. Markham asking for feedback regarding her non-selection. Mr. Markham replied that, while he had been impressed with her account management background, she "did not demonstrate in the interview that you currently have the ability to speak authoritatively to domain investors."

25.     On August 28, GoDaddy announced that it was hiring not one, but three individuals to work in Premier Services. Each of these individuals was in their 20s or early 30s. Ms. McEowen, who GoDaddy declined to hire, was 53 at the time.

4

26.     GoDaddy chose to hire these three individuals in spite of their lack of qualifications as compared to Ms. McEowen.

27.     GoDaddy chose to hire these three individuals in spite of the fact that Ms. McEowen had the superior history of job performance with GoDaddy.

28.     Though GoDaddy had claimed that Ms. McEowen lacked web domain knowledge as the reason for not selecting her, some or all of the selectees had even less domain knowledge.

29.     On information and belief, GoDaddy chose not to hire Ms. McEowen for Premier Services because of her age, 53.

30.     Ms. McEowen alerted GoDaddy's Human Resources department to the fact that she considered her non-selection to have been discriminatory.

31.     Some weeks later, GoDaddy's then-HR representative admitted to Ms. McEowen that GoDaddy had performed an internal investigation and concluded that she had indeed been the most-qualified candidate for the position.

32.     In an apparent attempt to avert a charge of discrimination, GoDaddy proposed to Ms. McEowen that it would create a fourth Premier Services position at Hiawatha that she could apply for.  It failed to do so.

33.     Ms. McEowen timely filed a complaint of discrimination with the Iowa Civil Rights Commission on May 8, 2019.

34.     In response to the discrimination complaint, GoDaddy repeated its previously-stated reason for failing to hire Ms. McEowen, and also alleged new and different reasons for the decision.  Specifically, GoDaddy alleged that Complainant had not shadowed or worked with any Premier Services employees and violated GoDaddy customer

5

service policies by at times providing her email address to and/or scheduling callbacks with customers.

35.    GoDaddy's newly-stated reasons for its failure to hire Ms. McEowen are false and pretextual.  Ms. McEowen did shadow a premier services member in preparation for her interview.  Moreover, as her awards and performance reviews show, Ms. McEowen's work not only complied with GoDaddy's policies, it routinely exceeded GoDaddy's own performance metrics.

36.    GoDaddy's discriminatory refusal to hire Ms. McEowen for Premier Services caused her damages.  In particular, Premier Services employees are highly compensated and have the opportunity to earn significant sales bonuses as compared to Ms. McEowen's current position with GoDaddy.

## CAUSES OF ACTION

### Count 1:  Violation of the ADEA

37.    Plaintiff incorporates paragraphs 1 through 36 of the foregoing.

38.    Defendant willfully and unlawfully failed and refused to hire Plaintiff for a Premier Services position because of her age, 53, in violation of 29 U.S.C. § 623(a)(1). Plaintiff was more qualified to work in Premier Services than some or all of the three selectees, yet Defendant hired the three much younger individuals instead.  Defendant's stated reasons for Plaintiff's non-selection are false and pretextual, showing that age discrimination was the true reason for the decision.  Defendant's violation caused Plaintiff's damages.

### Count 2:  Violation of the Iowa Civil Rights Act

39.    Plaintiff incorporates paragraphs 1 through 38 of the foregoing.

6

40.     Defendant willfully and unlawfully failed and refused to hire Plaintiff for a Premier Services position because of her age, 53, in violation of Iowa Code § 216.6(1)(a). Plaintiff was more qualified to work in Premier Services than some or all of the three selectees, yet Defendant hired the three much younger individuals instead. Defendant's stated reasons for Plaintiff's non-selection are false and pretextual, showing that age discrimination was the true reason for the decision. Defendant's violation caused Plaintiff's damages.

## DAMAGES

41.     Defendant's actions have caused Plaintiff's damages, including back pay, front pay, liquidated damages, emotional distress, and attorneys' fees and costs.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff asks this Court to enter a judgment:

a.  Declaring that the acts and practices complained of in this Complaint are in violation of ADEA and Iowa Civil Rights Act;

b.  Enjoining and permanently restraining these violations of law;

c.  Directing the Defendant to pay the Plaintiff actual, compensatory, and liquidated damages that she suffered, past and future;

d.  Directing the Defendant to award the Plaintiff front pay;

e.  Awarding the Plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

f.  Awarding the Plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

g.  Awarding the Plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

h.  Awarding the Plaintiff such other relief, legal or equitable, as may be warranted.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in the above-entitled matter.


DATED: January 31, 2020        SIMMONS PERRINE MOYER BERGMAN PLC

By: /s/ Kevin J. Visser
Kevin J. Visser #AT0008101
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Telephone: (319) 366-7641
Fax: (319) 366-1917
kvisser@spmblaw.com

ATTORNEYS FOR PLAINTIFF