IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| TAMMY MCEOWEN<br><br>Plaintiff,<br><br>vs.<br><br>GODADDY.COM, LLC<br><br>Defendant(s). | CASE NO. 1:20-cv-11-LRR-KEM<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

I. **PLAINTIFF WAS NOT QUALIFIED FOR THE POSITION** ...................................1

II. **PLAINTIFF CANNOT SHOW PRETEXT** ................................................................2

    A.    **GoDaddy Has Not Redefined the Premier Services Position**..........................2

    B.    **Plaintiff Cannot Redefine GoDaddy's Qualification Criteria** ........................4

    C.    **Plaintiff Cannot Prove the Hirees are Substantially Less Qualified**..............4

    D.    **Plaintiff Cannot Prove GoDaddy's Legitimate Non-Discriminatory Reason was False and Age was The Real Reason** ...........................................6

        i.    **The Pretext Standard** ............................................................................6

        ii.    **Plaintiff Cannot Prove GoDaddy's Reasons Were False** ....................8

        iii.    **Plaintiff Cannot Prove the Real Reason for GoDaddy's Decision was Age** ................................................................................................10

III. **CONCLUSION**..........................................................................................................10

Defendant, GoDaddy.com, LLC ("GoDaddy") submits this Reply in Support of its Motion for Summary Judgment ("Motion") pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7(g). In resisting GoDaddy's Motion, Plaintiff unilaterally declares that her experience made her the most qualified candidate for the Premier Services Representative position, but as a matter of law, Plaintiff's own opinion does not create an issue of material fact.  Plaintiff has not established a *prima facie* case of age discrimination.  Even so, GoDaddy has presented legitimate, non-discriminatory reasons for not selecting Plaintiff, and Plaintiff has failed to establish pretext. Plaintiff cannot disprove the hiring manager's honest belief regarding her interview performance and she has failed to present any evidence that GoDaddy's decision was based on age.  As such, Plaintiff cannot satisfy her ultimate burden of proving discrimination because of age. Plaintiff also fails to distinguish or contradict the controlling case law which unequivocally holds that it is an employer's role to identify the strengths that constitute the best qualified applicant, that courts do not sit as super-personnel departments reviewing the business judgment of employers, that an employer is entitled to rely on interview performance (including both objective and subjective criteria) in evaluating candidates, that the interviewer's perception (not the candidate's) matters, and that Plaintiff must prove that age actually played a role in the decision-making process and had a determinative influence on the outcome.  For all of these reasons, GoDaddy respectfully requests the Court enter summary judgment in its favor.

### I. PLAINTIFF WAS NOT QUALIFIED FOR THE POSITION

In her Resistance, Plaintiff argues she meets the qualification standard sufficient to satisfy her *prima facie* case because she qualified for an initial interview.  GoDaddy does not dispute Plaintiff qualified for a first-round interview, but qualifying for an interview does not qualify one for the position (as she and 20 other candidates learned).  Most of the job qualifications identified in the Job Posting could only be tested by interview, including the requirement of a "strong knowledge of domain monetization and domain aftermarket." [Doc. 20, SOF 21-23, 57-58] Following the interview, GoDaddy informed Plaintiff she did not advance in the hiring process because she did "not meet the qualifications for this role." [Doc. 20-2, APP. 164-65]  Markham

-1-
Case 1:20-cv-00011-LRR-KEM   Document 36   Filed 03/02/21   Page 2 of 12

testified that this statement was accurate, that Plaintiff did not qualify to advance to the second round of interviews. [Doc. 28-2, P-App I, 35 (Markham Dep. 215:22-216:6)] As such, Plaintiff was not qualified for the position, so she cannot satisfy her *prima facie* case.[1]

## II. PLAINTIFF CANNOT SHOW PRETEXT

### A. GoDaddy Has Not Redefined the Premier Services Position

Plaintiff's argument that GoDaddy has recharacterized this position is plainly false. GoDaddy has consistently made it clear that the Premier Services Representative position is an advisory role for domain investors and that domain and aftermarket knowledge is critical. This is evident in the Job Posting, the interview questions, Markham's Workday notes regarding all candidates, and Markham's email to Plaintiff addressing why she did not qualify. [Doc. 20, SOF 54; Doc. 20-2, APP. 114-115, 142; Doc. 25, APP. 149-156]

Similarly, GoDaddy has never denied that account management experience could be valuable for the Premier Services role.[2] Markham was excited to interview Plaintiff based on her resume; believed her account management experience might have brought value to his team, and he testified there is an account management aspect to this role. [Doc. 20, SOF 45; Doc. 20-2, APP. 082-83 (Markham dep. 104:24-105:8; 266:20-21)] That said, it has been GoDaddy's consistent position (and Plaintiff admits) that account management experience, *in and of itself*, does not

---

[1] Plaintiff's reliance on *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) for the proposition that "[s]imple inclusion on a list of candidates considered for the position" shows sufficient qualification to establish a *prima facie* case is misplaced. In *Torgerson*, the plaintiffs were found to be "qualified" for purposes of the *prima facie* case because they were placed on an "eligibility list" (a term of art under Minnesota statutes and Fire Civil Service Commission Rules) after they successfully passed three phases of the hiring process, making them eligible to move onto the final stage. 643 F.3d at 1036-37. As such, all people on the list were eligible to advance to a second-round interview, unlike here, where Plaintiff and others did not qualify for a second-round interview.

[2] As Plaintiff notes in her Resistance FN 4, "account management" is a term of art – and a broad one at that. It is not industry specific. For Plaintiff to argue that she had "precisely the qualifications" for this role simply because she had account management experience in a different industry demonstrates her complete lack of understanding of the position. If a lawyer applies for an IP attorney position and has 20 years of experience in family law, she is not more qualified than a lawyer who worked as an engineer for 5 years simply because she has more "legal experience." This is even more so where "legal experience" was not a job requirement.

qualify an applicant for the Premier Services position. [Doc. 20, SOF 8] Indeed, account management experience is not even mentioned in the Job Posting. [Doc. 20-2, APP. 114-15]

Plaintiff points to an "Intake Meeting" document (rather than the Job Posting) in an effort to prove that the Premier Services role is "really an account management role."[3] But again, GoDaddy does not dispute that there are components of account management in this position.[4] And this document certainly does not better define the job requirements than the actual Job Posting. Also, Plaintiff fails to note that under the section identifying "Experience," the document says any internal candidate "with the knowledge is the best." And account management experience is not listed under "Experience" or "Skills/Qualifications." [Doc. 28-2, P-App. I, 51-53]

Plaintiff also refers to a Job Posting for a Corporate Premier Services Account Manager position and argues that because the job description for the Premier Services Representative role contains some of the same qualifications and responsibilities as the Corporate Premier Services Account Manager role, that the Premier Services Representative position is really an account management role.[5] This argument is nonsensical. First, these are separate roles with different reporting structures in different parts of the organization and the Corporate Account Management Position does not involve working as an advisor for domain investors. [Doc. 28-2, P. App. I, 40 (Markham Dep. 243:25-244:25; SUPP.APP.006 (Markham Dep. 249:4-251:1)] Also, the Corporate Premier Services Account Management Job Posting does *not* include the domain and

---

[3] Plaintiff has not authenticated this document, in violation of LR 56(e), nor has any witness laid foundation for it. Markham testified that he could not speak to this document, he did not author it, he did not know what it was, he did not contribute to it, he was not familiar with it, and he had to make assumptions in interpreting it. [Doc. 28-2, P. App I, 14-15; (Markham Dep. 111:23-25; 112:5-6; 112:19-23; 115:4-8, 115:21-116:6; 116:11-14]. The document appears incomplete and contains errors, including the compensation for the role, the reference to a phone screening (which never occurred in this case), the reference to Frank Taylor as a candidate (he is the Director), and the reference to two interviewers (which did not occur here). [APP. 179, ¶ 2; P-Ap. I 14-15 (Markham Dep. 115:19-116:6; 111:23-113:25)].

[4] Plaintiff also cites to LinkedIn profiles (none of which are authenticated pursuant to L.R. 56(e)) to show some people use the phrase "account management" in their profiles. But again, GoDaddy has never denied that this job involves an element of account management; this does not mean domain and aftermarket industry knowledge is not critical.

[5] Despite her self-proclaimed expertise in account management, Plaintiff did not even apply for this position. [SUPP.APP.003 (McEowen Dep. 281:15-22]

aftermarket industry-specific descriptions that are required for the Premier Services Representative position. [Defendant's Reply to Plaintiff's Statement of Additional Material Facts, PSOF 13]

### B. Plaintiff Cannot Redefine GoDaddy's Qualification Criteria

In a failed attempt to aggrandize the qualifications she contends are important, Plaintiff argues it is not "common sense" for Markham not to consider performance reviews, awards, and resumes.[6] But the Eighth Circuit has held that it is entirely permissible for an employer to choose not to review resumes, performance appraisals, or seek input from colleagues familiar with an applicant's work, as there is no legal authority requiring an employer to rely on these steps to inform a promoting decision. *Cox. v. First Nat. Bank*, 792 F.3d 936, 940 (8th Cir. 2015). Plaintiff also misrepresents Taylor's testimony to suggest he expected Markham to review performance data or resumes. In fact, Taylor testified he does *not* tell Markham what he must do or not do in the initial round; he trusts his managers will send him the most qualified people *by going through the interview process*. [Doc. 20, SOF 24] Taylor explained it is the manager's responsibility to ensure candidates are qualified for the role by the time they get to the second-round interview, and "how he does that and goes about that is up to him." [Doc. 20-2, APP. 058 (Taylor Dep. 63:8-12)]

### C. Plaintiff Cannot Prove the Hirees are Substantially Less Qualified

After unilaterally concluding Premier Services "is an account management role," Plaintiff then declares she is "significantly better qualified" because she had more account management experience (at a different company, in a different industry, at a different time) than the other candidates. But the Job Posting did not require account management experience and the interview process did not inquire about prior job experience. In fact, the position was only posted internally and only GoDaddy work experience was considered. [Doc. 20-2, APP. 114-115] Plaintiff's self-serving affidavit about her performance at the Yellow Pages cannot be vetted by GoDaddy (or the Court), and even if it could, it did not matter. That work experience got her in the door at GoDaddy in 2014 – it did not qualify her for the Premier Services Representative position.

---

[6] Plaintiff falsely claims Markham relied on nothing but subjective criteria. But this is belied by the fact that each candidate was required to meet objective criteria regarding tenure, time in role, discipline, performance, education, and GoDaddy work experience. [Doc. 20, SOF 17, 19]

-4-
Case 1:20-cv-00011-LRR-KEM   Document 36   Filed 03/02/21   Page 5 of 12

Plaintiff argues her GoDaddy performance made her more qualified by pointing to awards, rankings and bonuses. But none of this information was considered in the hiring decision; Markham was not even copied on these communications. [Doc. 20, SOF 31-37] In fact, the only performance data Markham reviewed, and the only performance data that was considered by Recruiting to qualify for an interview, was the C3 dashboard data containing performance indicators for the 30-60 days prior to the job interviews, which Plaintiff conveniently fails to reference. [Doc. 20, SOF 17, 30; SUPP.APP.043]. That is because in the 60 days prior to the job interviews (and on average for the year 2018) Plaintiff had the *lowest* sales scores among the four candidates. [SUPP.APP.043]

Plaintiff claims she had superior domain knowledge than Miller[7] but in drawing this conclusion, she relies on Miller's initial, self-critical statement to Markham and ignores the remaining evidence in which Miller demonstrated significant industry knowledge. [Doc. 20, SOF 73-77] Plaintiff also tries to prove she was substantially more qualified in her domain knowledge by challenging the meaning of Markham's handwritten notes and suggesting that he should not be permitted to expand upon his notes in interpreting them. But "no rule requires that interview notes be the complete account of a manager's interview impressions, nor is there any requirement that a manager remember the details of interviews with pinpoint accuracy." *Brooks v. Ameren UE*, 345 F.3d 986, 988-89 (8th Cir. 2003). In addition to being obvious from looking at them, Markham testified his notes were shorthand and he provided context in his deposition. Oddly, Plaintiff now wants to limit Markham to the exact words on the page, but at the time of Markham's deposition, Plaintiff's counsel stated "I can read part, but not all of your handwriting…so I may be asking you to explain or translate what you've written, if that's agreeable?" [Doc. 28-2, P-App. 16 (Markham Dep. 124:21-25)] and he went on to ask Markham questions about his memory of the interviews, and the meaning of his notations.

---

[7] Notably, Plaintiff does not argue that she had more domain knowledge than Bublitz or Matteson and she actually admits Bublitz was the most knowledgeable candidate with regard to the domain aftermarket. [Doc. 28, Response to SOF 83]

-5-
Case 1:20-cv-00011-LRR-KEM   Document 36   Filed 03/02/21   Page 6 of 12

It cannot be disputed that Markham's notes, together with his explanations, support the fact that he honestly believed Bublitz, Matteson and Miller performed better in their interviews than Plaintiff. And it is the interviewer's perception that matters, not the candidate's subjective evaluation of her own relative performance. *Pribyl v. County of Wright*, 964 F.3d 793, 797 (8th Cir. 2020); *Torgerson*, 643 F.3d at 1050; *Brooks*, 345 F.3d at 987. Moreover, Plaintiff's arguments about minor discrepancies in Markham's notes or his interpretation of the interviews are immaterial and none suggest any age-related animus. See, *Pribyl*, 964 F.3d at 797 (plaintiff argued the interview notes contradicted the interviewer's testimony about the accuracy and context of her answers, but none of the disputes were material and none presented evidence that the reason for the action was gender animus); *Brooks*, 345 F.3d at 988-89 (plaintiff argued his answers were just as good as the answers by the selected candidates and explanations given by the interviewers were inconsistent with or not reproduced in their contemporaneous notes, but the inconsistencies were minor and irrelevant and did not give rise to pretext). Like in this case, elaborating on reasons for employment decisions is not evidence of pretext, particularly when the additional description is consistent with the company's belief. *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1004-05 (8th Cir. 2012). Here, Plaintiff cannot demonstrate through Markham's notes, either as written or with his interpretation, that Plaintiff was substantially more qualified than the three successful candidates.

### D. **Plaintiff Cannot Prove GoDaddy's Legitimate Non-Discriminatory Reason was False and Age was The Real Reason**

#### i. **The Pretext Standard**

It is Plaintiff who incorrectly states the pretext standard in an age discrimination claim. While *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133 (2000) held that in "appropriate circumstances" (none of which exist in this case), a strong *prima facie* case and strong evidence that the proffered reason is false may infer discrimination, *Reeves* did not overrule *Hicks*, which holds that to prove pretext, a Plaintiff must prove the employer's real reason was false <u>and</u> age discrimination was the real reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). More importantly, *Reeves* was decided <u>before</u> *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178

(2009), the decision in which the high court distinguished the ADEA from Title VII and found that, for a plaintiff to prevail in a case brought under the ADEA, a plaintiff has the burden of showing age was the "but-for" cause of the employer's adverse action. In light of the Supreme Court's holding in *Gross*, the Eighth Circuit, in *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516 (8th Cir. 2011), indicated the standard articulated in *Reeves* no longer applied to cases brought under the ADEA. As the Eighth Circuit explained: "In some cases, a strong factual showing that the employer's proffered reason is "unworthy of credence" may, when combined with a strong prima facie case, create an inference of age discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000); *Fitzgerald v. Action, Inc.,* 521 F.3d 867, 872 (8th Cir.2008). Under the ADEA, however, age must be the "but-for" cause of the employer's decision. *Gross,* 129 S. Ct. at 2351. Thus, proof that the explanation is false is necessary, but not sufficient, to show a pretext for discrimination under the ADEA. In other words, the plaintiff must show that the employer's stated reason was false *and* that age discrimination was the real reason." *Tusing*, 639 F.3d at 516 (emphasis added).[8]

This standard was reaffirmed just this month by the Eighth Circuit in *Starkey v. Amber Enterprises, Inc.*, No. 19-3688, 2021 WL 377800, at *2 (8th Cir. Feb. 4, 2021) (employer's articulated reason "shifts the burden to Starkey to establish the reasons given by [her employer] are pretextual and that age was the real reason for her termination."). Similarly, in *Meredith v. Shulkin*, 709 F. App'x 392 (8th Cir. 2017), an unpublished decision issued months after *Aulick*, the Eighth Circuit cited to *Tusing* for the proposition that, to prove pretext under the ADEA, a plaintiff must show employer's reason was false *and* age was the real reason for the adverse action.

Plaintiff also misrepresents the pretext standard under the ICRA when she claims *Hedlund v. State*, 930 N.W.2d 707 (Iowa 2019), "cites *Reeves* with approval." In reality, what *Hedlund* cited from *Reeves* was: "the plaintiff's age must have 'actually played a role in [the employer's

---

[8] Plaintiff also cites to *Aulick v. Skybridge Americas, Inc.*, 860 F.3d 613, 621 (8th Cir. 2017), but *Aulick* relies on *Torgerson*, which is not an ADEA case. Although Title VII decisions can inform ADEA cases, pursuant to *Tusing*, the pretext standard is different under the ADEA, where a plaintiff must show age was the real reason *in addition to* showing the employer's proffered reason was false.

decisionmaking] process and had a determinative influence on the outcome.'" *Hedlund*, 930 N.W.2d at 720. The Iowa Supreme Court in *Hedlund* states: "Finally, the burden returns to Hedlund to 'demonstrate that the proffered reason is a mere pretext for age discrimination.' In other words, '[i]f the employer offers a legitimate nondiscriminatory reason, the plaintiff must show the employer's reason was pretextual and that unlawful discrimination was the real reason for the termination.'" *Id.* (citation omitted). Thus, the pretext standard under the ICRA for age discrimination mirrors that under the ADEA.

### ii. Plaintiff Cannot Prove GoDaddy's Reasons Were False

GoDaddy's reasons for the hiring decision in this case have never changed. Markham's contemporaneous notes (handwritten and Workday), his communication to Plaintiff, his communication to Castillo, and his testimony in this case all consistently reflect his honest belief that the reason for Plaintiff's failure to advance was her interview performance, and specifically her insufficient depth of knowledge in the domain industry and her failure to demonstrate the ability to speak authoritatively to domain investors. [Doc. 20-2, APP.117-127, 142; Doc. 25, APP. 149-156; Doc. 28-2, P-App I 73-74].

Plaintiff argues this reason is false because Markham allegedly responded to Plaintiff's question of what qualifications he was looking for by stating "100% of what you just told me." But even if this is true, it does not reflect on Plaintiff's interview performance, her depth of industry knowledge, or her ability to speak to investors. She may have accurately identified the qualifications, but still performed poorly in the interview. And it certainly does not prove the reason GoDaddy provided to her is false.

She also argues GoDaddy's reason is false because Castillo told her that HR had conducted an after-the-fact investigation that determined Plaintiff "was the most qualified." Again, even if this is true, her apparent "qualifications" do not reflect on her interview performance, her depth of industry knowledge, or her ability to speak authoritatively to investors. She may possess qualifications on paper that an HR team can evaluate, but not have performed well in the interview. Thus, this does not prove GoDaddy's reason false. Also, HR did not attend the interviews or

participate in the hiring decision, and HR is not in a position to evaluate one's domain knowledge, so HR's opinion is irrelevant and immaterial. And critically, there is no allegation that this alleged HR investigation concluded that the hiring decision was made because of age.

Plaintiff also argues GoDaddy's stated reason is false because Castillo's notes say "based on her resume she was a top 3 pick," but this is immaterial. Even if Plaintiff had the *very best* resume, it did not matter because the hiring decision was not based on resumes alone and the reason GoDaddy gave Plaintiff for her non-selection was her interview performance. Similarly, Plaintiff argues that the resumes Markham reviewed were not the first three submitted in Workday.[9] But again, this is immaterial and it does not prove GoDaddy's reason for not advancing Plaintiff was false. The order in which he received or reviewed resumes, or how he selected them from Workday is irrelevant because Markham was impressed by all three of these resumes and the hiring decision was based on interview performance, not resumes.[10]

Go Daddy has unequivocally and consistently asserted its legitimate, non-discriminatory reason for its hiring decision, and none of Plaintiff's attempts to chip away at immaterial issues prove its reason is false. "Minor or irrelevant inconsistencies" in explaining a hiring decision do not suggest that a defendant's explanation does not have a basis in fact. *Cox*, 792 F.3d at 940. See

---

[9] Plaintiff misrepresents Markham's testimony. He testified that these three resumes were "among the first three applications [he] received. They were among the first three resumes that I received." [Doc. 20-2, APP. 082 (Markham Dep.101:5-10)] It is also unknown if Markham received applications in Workday in the same order in which they were submitted.

[10] Plaintiff notes that GoDaddy's position paper to the ICRC contained an inaccuracy regarding whether Plaintiff shadowed before her interview. In addition to the fact that this document is unauthenticated, inadmissible hearsay, it is minor, irrelevant and immaterial. The position paper identified the very same reason for not advancing Plaintiff that GoDaddy has consistently stated: "she lacked the requisite knowledge for the position when compared to the successful candidates and she performed poorly during her interview." The paper did not state that the reason Plaintiff did not advance was because she did not shadow. Also, the position paper was prepared pre-litigation and thus clarified: "the information set forth in this position paper is based upon the writer's understanding and investigation of the facts at this time. By submitting the instant position paper, GoDaddy in no way waives its right to present new or additional facts or arguments based upon subsequently acquired information or evidence. This document does not constitute an affidavit and is not intended to be used as evidence of any kind in any agency or court proceeding…. GoDaddy also reserves the right to object to the admissibility of this statement and its attachments in any subsequent litigation." Therefore, any minor or irrelevant inconsistency is immaterial and inadmissible.

also, *Brooks,* 345 F.3d at 989 (minor and irrelevant inconsistencies given by the interviewers do not demonstrate the interviewers were untruthful in their assessments of a plaintiff's interview performance and abilities).

### iii. Plaintiff Cannot Prove the Real Reason for GoDaddy's Decision was Age

In her Resistance, Plaintiff has not come forward with *any* evidence to suggest GoDaddy's real reason for its hiring decision was age. She argues Markham could have made an educated guess about the ages of the candidates by seeing them in the video interview, by meeting them before the interview, by seeing photos of them on social media, or by seeing their job histories on their resumes. But simply knowing (or guessing) someone's age, based on a resume or by seeing them in person or in a photo, is not evidence of age discrimination. Indeed, if mere knowledge of someone's age was sufficient, every interview could lead to a jury trial.

### III. CONCLUSION

Plaintiff's position would require the Court and the jury to essentially re-interview the candidates to evaluate their interview performance and their domain and aftermarket industry knowledge from nearly three years ago. This is not only impossible, it is inappropriate, as the Eighth Circuit has made it clear that courts are not to sit as "super personnel departments" questioning a company's business judgment. GoDaddy's position has been consistent – both about the job qualifications and the reasons why Plaintiff did not advance. Plaintiff cannot prove she was qualified for the position, that the successful candidates were substantially less qualified than she, that GoDaddy's stated reasons for its decision were false, or that GoDaddy's decision was really about age. As such, Plaintiff cannot satisfy her ultimate burden of proving GoDaddy intentionally discriminated against her because of her age, and summary judgment is appropriate.

RESPECTFULLY SUBMITTED this 26th day of February, 2021.

By  */s/ C. Christine Burns*
C. Christine Burns (*Admitted Pro hac vice*)
BURNSBARTON PLC
2201 E. Camelback Rd., Suite 360
Phoenix, AZ 85016
Telephone: 602-753-4511
christine@burnsbarton.com
*Attorney for GoDaddy.com, LLC*

# CERTIFICATE OF SERVICE

      I hereby certify that on February 26, 2021, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

      A COPY was also e-mailed on this 26th day of February, 2021, to:

Kevin J. Visser
Michael Neuerburg
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Telephone: (319) 366-7641
Fax: (319) 366-1917
kvisser@spmblaw.com
mneuerburg@spmblaw.com
ATTORNEYS FOR PLAINTIFF

s/ *Carolyn Galbreath*